DECISION
Before this Court is an appeal by Leonard Pezza and Constance Pezza (hereinafter "Appellants" or "Appellant") from an August 23, 2005 decision of the Johnston Zoning Board of Review (hereinafter "Zoning Board"), denying Pezza's application for a dimensional variance. Jurisdiction is pursuant to G.L. 1956 §45-24-69.
 FACTS AND TRAVEL
Appellants own two vacant lots located in the Town of Johnston on Irons Avenue, Lots 26 and 305 on Assessor's Plat 35. Decisionof the Board, filed August 23, 2005, at 1. Together, the two lots measure 21,335 sq. ft. Id. Presently, the Johnston Planning Board has not approved the merger of the two lots.
Appellants sought dimensional relief from the frontage requirements for construction of a duplex on Lot 305, which Appellants intend to sell as two condominiums. Tr. at 15. Lot 305 is entirely surrounded by other privately-owned lots and does not have any access to a public street. Lot 26 lies to the east of Lot 305 and has a strip that extends to the south and abuts Irons Avenue. The combined lot has only 25 feet of frontage on Irons Avenue. Lot 305 and the northern section of Lot 26 are in an R-7 zone, which requires a minimum lot size of 12,000 sq. ft. to build a duplex and 120 feet of frontage on a town-accepted road. Johnston Town Code § 26-10 Table III F-1 at 2656. Appellants requested relief of 95 feet from the frontage requirement. The southern section of Lot 26, which abuts Irons Avenue, is located in an R-15 zone.
A duly noticed hearing was conducted on April 28, 2005. At the hearing, Appellants introduced into evidence a revised building.Tr. at 7. The new plan guarantees that the house will not interfere with a right of way located on Lot 26, which primarily serves Lots 25 and 27. Id. at 17. Appellant testified that he owned the lots since 1984 and used Lot 26 to access his sand and gravel operation located on Lot 305. Id. at 12. He also testified that there would be no infringement on the right of way over Lot 26. Id. at 14.
James Sloan, an expert witness on real estate, testified regarding the plan to build a duplex on Lot 305 and submitted his report. Id. at 23. After reviewing the area, Mr. Sloan observed that the neighborhood consisted of both single-family and two-family dwellings. Id. at 25. Accordingly, Mr. Sloan opined that the proposed duplex "would be in harmony with the area in question." Id. at 26. Mr. Sloan also testified, after discussing the situation with Appellant, that the primary motivation for building a duplex was not financial gain, that the relief requested was the least amount necessary, and that the hardship was not the result of actions of the Appellant. Id. at 28-30. Further, Mr. Sloan testified that without a variance, the owner could make no other reasonable or beneficial use of the property and that denying the variance would amount to more than a mere inconvenience. Id. at 30. When questioned about the possibility of building a single-family residence, which would require 20 fewer feet of relief, Mr. Sloan explained to the Zoning Board that in his opinion, the relief required to build a single-family residence would be comparable to the relief required to build a duplex, and that the duplex would be an appropriate use of the property in the context of the surrounding area. Id. at 31.
Zoning Board members expressed concern that Appellants were seeking a variance for Lot 26 when they were planning to build on Lot 305. Id. at 33. Appellants' attorney informed the Zoning Board that they were going to merge the two lots. Id. In response to the Zoning Board's position that it did not have the authority to merge the lots, Appellants argued that they had to obtain the variance from the Zoning Board before they could go to the Planning Board to merge the lots. Id. at 35. After several minutes of discussion, the Chairman changed topics without resolving the conflict involving the merger. Id. at 41.
Next, the Zoning Board recognized an attorney representing Daniel and Assunta Lombardi, who own neighboring property and who have since entered this matter as third-party intervenors, along with other neighbors (hereinafter "Intervenors"). The attorney proceeded to question Mr. Sloan about his knowledge of the history of the area surrounding lots 305 and 26. Id. at 43. Mr. Sloan testified that through conversations with Appellant, he learned that Appellant had previously owned the majority of land to the west of Lot 305, which was used to create the Pezzi Street development. Id. at 44. Mr. Sloan also testified that Lot 305 was left out of the development, which the Town Council limited to five houses in a 1989 decision to re-zone the area in order to accommodate the development. Id. at 45. Appellant also informed Mr. Sloan that the Zoning Board subsequently granted relief to Daniel Mansolillo in 1994 in order to build two additional houses on land in the development that Appellant conveyed to him. Id.
at 46. During questioning, Mr. Sloan repeatedly mentioned that Lot 305 was not incorporated into the Pezzi Street development.Id. at 48.
The Intervenors' attorney then cross-examined Appellant, who testified that Lot 305 was originally part of a large parcel that was ultimately used to create the Pezzi Street development. Id.
at 52. When asked how he continued to own Lot 305 after the development of Pezzi Street, Appellant testified that he "had it subdivided at the time to take in this piece." Id. at 53.
After Mr. Sloan and Appellant concluded their testimony, several neighbors testified against the Application. Raymond Russo testified that when he purchased his property, which lies directly to the west of Lot 305, he asked Mr. Mansolillo if Lot 305 was a "buildable" lot, but was told that it was not. Id. at 60. Mr. Mansolillo was present and, after being sworn in, testified that he told Mr. Russo that he did not know that there was access to the lot and that he did not think it was going to be built on, but that he did not know what would happen in the future. Id. at 61. Mr. Russo explained to the Zoning Board that he would have bought the land if he had known that he could have built upon it. Id. at 62.
Next, Albert Coutu provided the Zoning Board with photographs of the property in question to demonstrate the size of the frontage on Irons Avenue belonging to Lot 26. Anthony Marsella, a resident of Pezzi Street and a Deputy State Fire Marshall, also testified regarding his concerns over whether the right of way through Lot 26, which would serve as the sole access to the duplex built on Lot 305, could provide emergency vehicles with sufficient space to respond to an emergency, especially fire, which may occur in the duplex. Id. at 70-71. Appellant testified that he had accessed Lot 305 with heavy equipment, but the Chairman informed him that his testimony would be hearsay because he was a layman. Id. at 74.
At the conclusion of the hearing, the Zoning Board voted to deny the Application. Id. at 79-81. After noting that the vote to deny was unanimous, the Chairman stated that he was not "comfortable with the asking of merging. We do not have the power to merge; only the Planning Board can do that. It should go there, first." Id. at 80. In its decision, the Zoning Board concluded that "(1) [t]he hardship is the result of action of the applicant and results primarily from the desire of the applicant to realize greater financial gains; (2) [t]he relief sought is not the least necessary." Decision at 2.
 STANDARD OF REVIEW
Rhode Island General Laws § 45-24-69 confers jurisdiction on the Superior Court to review the decision of a zoning board, and provides, in relevant part:
 (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. Of Review of North Kingstown,818 A.2d 685, 690 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
To clarify the limitations on the power of a zoning board, the Rhode Island Supreme Court has held that "[a] zoning board of review, as a statutory creation, `is without powers, rights and duties or responsibilities save for those conferred upon it by the Legislature.' A zoning board is charged with enforcement of zoning legislation and deciding applications for variances and special exceptions." Town of Coventry Zoning Bd. of Review v.Omni Development Corp., 814 A.2d 889, 896 (R.I. 2003) (internal citations omitted).
 APPLICATION FOR A VARIANCE
Appellant applied to the Zoning Board for a dimensional variance in order to construct a duplex on property on Irons Avenue, which is comprised of Lots 305 and 26. The Zoning Board denied Appellant's application because it found that he created his own hardship, was motivated primarily by a desire for financial gain, and had not requested the least relief necessary.
Procedurally, Appellant maintains that he has to go to the Zoning Board first to obtain approval for the variance on the required frontage and then will go to the Planning Board to merge the lots. Tr. at 35. The Zoning Board informed the Appellant that he has to go to the Planning Board to obtain conditional approval for the merger prior to applying for the variance. Tr.
at 41.
At the Zoning Board hearing, the Appellant explained that he spoke with two people at the Planning Board, Jeanne and George, who instructed him to present the plan to the Zoning Board and that, if it was approved, the Planning Board would "put the merger together." Tr. at 38. When questioned about how the Zoning Board could give a variance for a lot where nothing was to be built, Appellant's attorney replied: "I think you have to not look at it in that strict interpretation." Tr. at 39.
However, during the discussion about merging lots, the Chairman informed the Appellant that the Zoning Board is "not empowered to merge lots." Tr. at 37. He further advised the Appellant that "[i]f you're going to merge two with that, you've got to go get permission from Planning. We can't do that." Tr. at 38. The Chairman stated that prior practice has been for applicants to go to the Planning Board first to obtain the merger and then to go to the Zoning Board to request the necessary dimensional variance. Tr. at 41. The Zoning Board's Decision does not reference the need for the Appellant to obtain a merger from the Planning Board before the Zoning Board may vote to grant or deny a dimensional variance. Nevertheless, the record evidences that the Zoning Board viewed the need for a merger as evidence of Appellants' role in creating his own hardship.
In the Johnston Zoning Ordinance, the Land Development and Subdivision Review Regulations, Sec. V. Art. A provides that "[w]here an applicant requires both a variance from the Town of Johnston Zoning Ordinance and Planning Board approval, the applicant shall first obtain an advisory recommendation from the Planning Board, as well as conditional Planning Board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional Zoning Board relief, and then return to the Planning Board for subsequent required approval(s)." The Zoning Board may only exercise the powers granted to it by legislation and may not perform the functions assigned to the Planning Board. See Town of Coventry ZoningBd. of Review v. Omni Development Corp., 814 A.2d 889 (R.I. 2003).
In the instant case, the Appellant wants to build a duplex on Lot 305, which is located in an R-7 zone. Lots in an R-7 zone must have 120 feet of frontage on a town-accepted road. However, after being excluded from the subdivision that constitutes the Pezzi Street development, Lot 305 does not have any frontage on a town-accepted road. Appellant also owns Lot 26, a lot contiguous to Lot 305 that extends southerly to Irons Avenue, a town-accepted road. However, Lot 26 only has 25 feet of frontage on Irons Avenue. In order to build on Lot 305, Appellant wants to merge the two lots to establish frontage on a town-accepted road for Lot 305. The Planning Board must approve all mergers. The resulting lot will still require a dimensional variance for the frontage requirement because there will still be only 25 feet of frontage though an R-7 zone requires 120 feet. The Zoning Board possesses the jurisdiction to grant dimensional variances. Therefore, the Appellant requires both approval for a merger from the Planning Board and a dimensional variance from the Zoning Board. Accordingly, the Zoning Board's denial of a variance without conditional merger approval was not in violation of statutory or ordinance provisions.
 DECISION ON THE MERITS
Substantively, Appellant argues that he is entitled to relief on the dimensional requirements for frontage in an R-7 zone because without the variance, he would be unable to make use of the property. Appellant also maintains that a duplex is a permitted use in an R-7 zone and therefore the fact that it will result in greater financial gain while requiring more relief than a single-family residence is irrelevant. Although the Zoning Board did not have to reach the merits of Appellant's application, it did so.
In Art. 3, Section O, Variances, the Johnston Zoning Ordinance provides:
 "(2) In granting a variance, the Zoning Board shall require that evidence of the satisfaction of the following standards be entered into the record of the proceedings:
 (a) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (b) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (c) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the ordinance or the Comprehensive Plan upon which this Ordinance is based; and
 (d) That relief granted is the least necessary."
Additionally, when granting a dimensional variance, the Zoning Board requires evidence:
 "that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
The Zoning Board found that "[t]he hardship is the result of the action of applicant and results primarily from the desire of the applicant to realize greater financial gain," and that "[t]he relief sought is not the least necessary." Decision at 2. At the end of the hearing, the Chairman told the Appellant "[y]ou created this problem yourself, the way you developed it," referring to the Pezzi Street subdivision. Tr. at 78. Appellant argues that he did not create his hardship because the prior subdivision did not affect Lot 26, which is the lot that has 25 feet of frontage and requires the relief of 95 feet.
In the Johnston Zoning Ordinance, a "lot" is defined as
 "[e]ither: (a) The basic development unit for determination of lot area, depth, and other dimensional regulations; or (b) A parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title."
Currently, the lot the Appellant intends to build on, the combined area of Lots 305 and 26, has not been established by any legal instrument, nor has the necessary merger of the two lots received even conditional approval from the Planning Board.[1] A merger is a subdivision subject to the jurisdiction of the Planning Board. (Johnston Zoning Ordinance, Land Development and Subdivision Review Regulations, Sec. II, Art. B (1)(b)(1).) The Zoning Board of Review "is without authority to divide or to regulate the subdivision of land."Noonan v. Zoning Bd. of Review, 90 R.I. 466, 471, 159 A.2d 606,608 (1960)).
The record reveals that the Appellant developed the area around Pezzi Street, which left Lot 305 without independent access to a town-approved road. Appellant has been able to access Lot 305 through Lot 26 because he owns both lots. The Appellant did not receive approval for a merger of the two lots. As a result, Appellant's application to the Zoning Board sought a dimensional variance for a lot upon which he does not intend to build, Lot 26, for which the zoning board could not grant variance relief. By failing to include Lot 305 in the previous subdivision or get Planning Board approval to create a buildable lot, the Appellant created his own hardship.
Additionally, Appellant maintains that his application was not filed primarily to realize greater financial gain, and that, without a variance, he would be unable to make any economically viable use of the property. Appellant argues that a two-family residence is a permitted use and therefore the fact that it will result in different financial gain and that it requires different dimensional relief is irrelevant.
The Rhode Island Supreme Court addressed the issue of an owner seeking a dimensional variance for a permitted use on a landlocked parcel in Lischio v. Zoning Bd. of Review of Town ofNorth Kingstown, 818 A.2d 685 (R.I. 2003). In Lischio, the court held that
 "when seeking dimensional relief for lawfully permitted uses the review should not focus on the use of the parcel because a legislative determination has been made previously that the use is appropriate and does not adversely affect the general character of the area. A permitted use, under § 45-24-31 (52), is `a use by right which is specifically authorized in a particular zoning district.'" Id. at 693.
However, Lischio is distinguishable from the current case for the purposes of analysis under R.I.G.L. § 45-24-41 (c), which was adopted in the Johnston Zoning Ordinance in Art. 3, Sec. O. InLischio, the landlocked parcel resulted from a taking by eminent domain, and therefore, the petitioners did not create their own hardship. Id. at 687. Additionally, the relief sought in Lischio would be the same regardless of what structure was built on it because it was zoned as a general business district, which has a uniform frontage requirement of 200 feet. Id. at 694.
In the instant case, Appellant wants to build a duplex, which is a permitted use in an R-7 zone and therefore would not alter the character of the neighborhood. However, the Zoning Board found that Appellant created his own hardship through his development of the land surrounding Lot 305, which violates §45-24-41 (c) (2). The Court has specifically held that "[a] variance is not properly granted to insure personal convenience or a more profitable use of the property." Rozes v. Smith,120 R.I. 515, 521, 388 A.2d 816, 820 (1978).
The Zoning Board further found that Appellant sought to achieve greater financial gain by building a duplex rather than a single-family home, thus not meeting the requirement of §45-24-41 (c) (2). Additionally, a duplex requires more relief than a single-family residence, which is also a permitted use. Therefore, the Zoning Board's finding that Appellant did not seek the least relief necessary and created his own hardship was not clearly erroneous in view of the reliable, probative, and substantial evidence of record.
 CONCLUSION
After review of the entire record, this Court finds the decision of the Zoning Board was not clearly erroneous in view of the reliable, probative, and substantial evidence of record. It is well settled that a correct judgment may be sustained, "even if it was reached through faulty reasoning or mistake of law."Mesolella v. City of Providence, 439 A.2d 1370, 1373 (R.I. 1982).
The Zoning Board abused its discretion in considering a dimensional variance for a lot on which nothing was to be built, and for which there was no Planning Board approval. However, its denial of said variance was not in violation of statutory or ordinance provisions. Substantial rights of the Appellants have not been prejudiced. Accordingly, the decision of the Zoning Board is affirmed.
Counsel should submit the appropriate judgment for entry.
[1] According to the record, both lots have previously been involved in actions affecting their zoning status. Part of Lot 26 was re-zoned by the Town Council in order to facilitate the Pezzi Street development. Lot 305 was also re-zoned and was excluded from the Pezzi Street development, which was limited to five houses. However, in 1994, the Zoning Board granted Mr. Mansolillo a variance to build two more houses on Pezzi Street, but Lot 305 was not included in that application.